﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/19 Archive Date: 01/30/19

DOCKET NO. 180806-201
DATE: January 31, 2019

ORDER

Entitlement to service connection for bilateral hearing loss is denied.

FINDINGS OF FACT

1. The Veteran’s military occupational specialty was infantryman; military noise exposure is conceded.

2. The Veteran’s bilateral hearing loss was not incurred in, and was not otherwise related to, his military service, to include military-related noise exposure.

CONCLUSION OF LAW

The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty in the U.S. Navy from August 1973 to August 1976. He also served on active duty in the U.S. Army from May 1980 to July 1981, but received a dishonorable discharge. The Veteran selected the Supplemental Claim lane when he submitted his RAMP election form. Accordingly, the July 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the July 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for bilateral hearing loss. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55, § 5104A, 131 Stat. 1105, 1106-07.

1. Entitlement to service connection for bilateral hearing loss.

The Veteran contends that his bilateral hearing loss is related to his active military service. 

The AOJ found that a military discharge document shows the Veteran served in infantry while in the Navy; thus, in-service exposure to hazardous noise is conceded. The AOJ also found that the audiogram from Hearing Health Associates shows a current diagnosis of bilateral hearing loss.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated during active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or, when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. The result of an audiogram administered by a state-licensed audiologist is the only type of evidence deemed competent to show a hearing impairment for VA purposes. See 38 C.F.R. § 4.85.

Where there is a chronic disease shown as such in service or within the presumptive period under 38 C.F.R. § 3.307, so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b).

Service connection may be established for chronic diseases, to include sensorineural hearing loss, manifesting to a certain degree within a year after service. 38 U.S.C. §§ 1112, 1113, 1137; 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309(a).

The question in this case is whether a causal relationship or nexus exists between the Veteran’s bilateral hearing loss and his in-service noise exposure. For the reasons that follow, the Board finds that service connection is not warranted.

A review of the Veteran’s service treatment records (STRs) show the Veteran had some decreased hearing acuity on the enlistment audiogram. Additionally, the Veteran denied having hearing loss or ear trouble on the December 1972 Report of Medical History and was determined to be normal on clinical evaluation. As such, the Veteran’s hearing is determined as normal upon entrance into active service.

The Veteran’s December 1972 enlistment audiometric test reveals that the Veteran’s pure tone, in decibels, were as follows:

 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 30 25 15 15 20

LEFT 30 25 20 25 30

A December 1974 audiometric test reveals that the Veteran’s pure tone, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 25 20 15 25 35

LEFT 25 15 15 20 30

Audiometric testing was not conducted at separation in April 1976. However, at separation, the Veteran’s hearing was noted as 15/15 in each ear on whisper and spoke voice testing. Clinical evaluation of the ears on the separation examination were normal, and the Veteran reported “no” to hearing loss on his Report of Medical History at separation.

A January 1980 audiometric test completed while the Veteran was serving in the U.S. Army reveals that the Veteran’s pure tone, in decibels, were as follows:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 10 10 10 20

LEFT 15 15 15 15 15

The Veteran underwent VA examinations for his hearing loss in February 2006, July 2012, and June 2018.

The February 2006 VA examiner noted that the results of the examination were unreliable and that given the unreliability, he was unable to provide an opinion regarding the etiology of the Veteran’s hearing loss.

The July 2012 VA examiner initially provided a positive nexus opinion. However, in September 2012 correspondence, he explained that such was error and he meant to opine that the Veteran’s hearing loss was not at least as likely as not caused by or a result of his miliary service. The rationale provided was the same rationale provided on the July 2012 VA examination report. The examiner explained that the normal whisper test at separation did not rule out hearing loss. However, the examiner further explained that the audiogram conducted in 1980 showed normal auditory thresholds, and when compared with the entrance thresholds, there was not a decrease beyond normal progression and test retest variability. The Board notes that the examiner reported the date of the 1980 audiogram as 1986 and noted that it was 10 years after service. However, reading the rationale as a whole, the Board finds that the basis for the examiner’s opinion essentially was that there was no decrease beyond normal progression and test retest variability between the Veteran’s entrance auditory thresholds and his January 1980 thresholds. 

The June 2018 VA examiner opined that the Veteran’s bilateral hearing loss was not at least as likely as not caused by or a result of an event in military service. The examiner noted that there was no evidence of hearing loss within the STRs and the January 1980 hearing exam showed normal hearing. The examiner explained that because the January 1980 exam showed normal hearing bilaterally after his exit from service, it was not likely that the Veteran had hearing loss at the time of his separation. The examiner explained that studies have shown that there is insufficient scientific evidence for delayed-onset hearing loss secondary to military noise exposure. The examiner also explained that if hearing is normal at discharge and there is no permanent significant threshold shift greater than normal progression and test retest variability during military service, as is the case with this particular Veteran, then there is no basis on which to conclude that current hearing loss is causally related to military service.

The Veteran provided a private opinion in February 2018 from J.D., MS CCC-A, who opined that the Veteran’s current hearing loss is at least as likely as not caused by or a result of an event in military service. J.D. noted that the Veteran’s entrance exam showed “very mild” hearing loss at several frequencies and that a second test in December 1974 showed “slight deterioration” in the highest frequencies. She noted that a threshold shift or further hearing loss cannot be ruled out at the time of separation. J.D. explained, in pertinent part, that her opinion was based on case history of excessive noise and a whisper test being performed at separation.

After careful consideration of the evidence of record, the Board finds that it is less likely than not that the Veteran’s bilateral hearing loss was caused by or incurred during his active service.

The Board may favor one medical opinion over another if it provides an adequate statement of reasons or bases. D’Aries v. Peake, 22 Vet. App. 97, 107 (2008). When determining how much probative weight to assign an opinion, the Board may consider the opining physician’s expertise and training, the facts and data on which the opinion is based, and the quality of the rationale supporting the opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301-02 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

The Board finds the September 2012 and June 2018 VA opinions persuasive and highly probative as they reflect consideration of all relevant facts and the examiners provided detailed rationales for the conclusions reached. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion).

The Board assigns the February 2018 private opinion limited probative weight. J.D. does not address or reconcile the January 1980 audiometric test results showing normal hearing with her opinion that the Veteran’s hearing loss was at least as likely as not caused by his military service. Additionally, the examiner who authored the September 2012 opinion is an audiologist who holds a Ph.D., and the examiner who authored the June 2018 opinion is also a Doctor of Audiology. Both examiners have more expertise and training than a clinician who holds an MS CCC-A. As such, the Board assigns the February 2018 private opinion less probative weight than the September 2012 and June 2018 VA opinions. 

The Board acknowledges the Veteran’s representative’s contention that the December 1974 audiometric test shows the Veteran’s hearing was not normal a year into service. See October 2018 Informal Hearing Presentation. While the Board acknowledges that there was a “slight deterioration” in the auditory thresholds in the higher frequencies (30000 and 4000 decibels) in the right ear when compared with the Veteran’s entrance audiometric test results, the test shows normal hearing for VA purposes. See 38 C.F.R. § 3.385. Moreover, the June 2018 VA audiologist opined that the Veteran’s hearing was normal at discharge and there was no permanent significant threshold shift greater than normal progression. This is more probative than the lay opinion offered by the Veteran’s representative.

The Board acknowledges the Veteran and appellant’s assertions that his hearing loss was related to his military service. However, neither are competent to provide a nexus opinion in this case. This issue is medically complex, as it involves internal disease processes and requires knowledge of interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). 

The Board has considered whether service connection is warranted on a presumptive basis for chronic diseases. 38 C.F.R. § 3.309(a); Fountain v. McDonald, 27 Vet. App. 258 (2015) (sensorineural hearing loss is considered a chronic disease for the purposes of § 3.309(a)). The evidence does not show that the Veteran’s hearing loss manifested to a degree of 10 percent or more within a year of separation from service; therefore, presumptive service connection is not warranted. 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

The Board also has considered whether service connection is warranted based on a continuity of symptomatology framework. 38 C.F.R. § 3.303(b). However, as the evidence does not show that hearing loss was noted in service, and the Veteran has not contended that he has had hearing loss in and since service, the continuity of symptomatology framework is not sufficient to grant this claim. 

In sum, the most competent and probative evidence weighs against a finding that the Veteran’s hearing loss was incurred in, or was otherwise related to, active military service. As the preponderance of the evidence is against the claim under any applicable theory of service connection, the benefit of the doubt rule does not apply. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). Service connection is denied.

 

D. JOHNSON

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Mortimer, Associate Counsel